## (May 24, 1983)

■ DAVID MANNIS, Respondent, v JILLANDREA REALTY Co., et al., Appellants. — Order of the Supreme Court, New York County (Stecher, J.), entered on October 12, 1982, which granted plaintiff tenant's motion for a preliminary injunction and denied defendants landlords' cross motion for an order dismissing the complaint, is reversed, on the law, without costs or disbursements, plaintiff's motion for a preliminary injunction is denied and defendants' cross motion to dismiss the complaint is granted. Defendant Jillandrea Realty Associates (improperly designated Jillandrea Realty Co. in the caption) is the owner and landlord of a building at 310 West 85th Street in Manhattan. Plaintiff David Mannis is the tenant of apartment 8C in said building pursuant to his most recent lease dated October 14, 1981, which had a term commencing on December 1, 1981 and ending on November 30, 1984. On or about July 26, 1982, defendant Jillandrea served plaintiff with a notice to cure alleging that the tenant had violated the terms of his lease in that persons other than the tenant or members of his immediate family were occupying the apartment, and that all or a portion of the apartment had been sublet, assigned, or otherwise permitted to be occupied by such unknown person or persons. The notice to cure required the breach to be cured on or before August 9, 1982, and by subsequent letter agreement, the tenant was given an extension of time in which to cure, until August 16, 1982. On August 13, 1982, the tenant commenced the instant action for a declaratory judgment in which he sought, *inter alia,* injunctive relief prohibiting the landlord from terminating his tenancy, from instituting summary proceedings to dispossess plaintiff, and from disturbing plaintiff's possession of his apartment in any way. Plaintiff

moved by order to show cause for a preliminary injunction enjoining the landlord pending determination of the action from terminating his lease or from instituting summary proceedings against him. Defendants cross-moved for an order dismissing the complaint based upon improper service. Plaintiff asserts upon appeal that he had been on a business assignment and his girlfriend was apartment-sitting during a brief period. This business assignment has now terminated according to him, and his girlfriend has returned to her own home and he has now resumed the full and exclusive use and occupancy of his apartment. Upon these facts, conceded by him, the tenant does not appear to be threatened with eviction at this time. Reversal is mandated because relief was available, on the instant facts and the circumstances present herein, in the Civil Court under RPAPL 753 (subd 4). Thus, the injunctive relief should have been denied and the cross motion to dismiss the complaint granted on that ground. In view of this result, there is no reason for us to reach the ground of improper service advanced by defendants upon their cross motion. However, it is important to note that when the Legislature enacted this recent statute, it apparently did not intend to eliminate completely the availability of relief in the Supreme Court, in certain situations, pursuant to *First Nat. Stores v Yellowstone Shopping Center* (21 NY2d 630). *Yellowstone* relief may still survive, for instance, where a tenant requires affirmative equitable relief and where the Civil Court lacks the wide equitable powers to fashion such affirmative relief. The Court of Appeals recognized in *Yellowstone* that there may be circumstances where it is necessary and appropriate that a tenant seek the broad equitable powers of the Supreme Court to treat with a complex issue (clearly not present in the instant case), in which the jurisdiction or competence of the Civil Court, because of calendar congestion and the summary nature of the proceeding, is lacking (see *First Nat. Stores v Yellowstone Shopping Center, supra,* at p 637). Regretfully, in an amendment of this significance, the purpose of RPAPL 753 (subd 4) is not expressed in any official legislative memorandum. Absence of such a memorandum has led to confusion in the interpretation of subdivision 4 by the trial courts (see, e.g., *Schuller v D'Angelo,* 117 Misc 2d 528). The case before us, however, is inappropriate for an in-depth analysis of this important legislation, including its effect upon the renewability of leases. Concur — Ross, Asch and Alexander, JJ.

Murphy, P. J., and Milonas, J., concur in a memorandum by Milonas J., as follows: Defendant-appellant Jillandrea Realty Company is the landlord of a building located at 310 West 85th Street in Manhattan. On or about July 26, 1982, Jillandrea served plaintiff-respondent David Mannis, the tenant of apartment 8C, with a notice to cure which charged that Mannis had violated the terms of his lease by permitting persons other than himself or his immediate family to occupy the subject apartment and that all or a portion of the premises had been sublet or assigned by such unknown person or persons. The purported breach was to be cured on or before August 9, 1982, but by letter agreement the tenant's time to cure was extended until August 16, 1982. On August 13, 1982, plaintiff commenced the instant declaratory judgment action for a preliminary injunction to restrain the landlord from terminating his lease or instituting any summary proceedings to dispossess the tenant from the building in question. According to the plaintiff, his business assignment terminated during the pendency of the instant matter and his girlfriend, who was apartment-sitting for him during his absence, vacated the premises and returned to her own home. Pursuant to the rationale of *First Nat. Stores v Yellowstone Shopping Center* (21 NY2d 630), the appropriate procedure for a tenant confronted with a notice to cure was to bring a declaratory judgment

action and obtain a restraining order tolling the time to cure the alleged breach while seeking a preliminary injunction. Since the Civil Court did not have the power to extend the time to cure, and the lease would be at an end upon the expiration of the time delimited in a notice to cure if the alleged violation remained uncured, a tenant who believed that he or she had not breached the lease could not risk waiting for the dispute to be resolved through summary eviction proceedings. However, a recently enacted amendment to RPAPL 753 states that in a proceeding to recover possession of premises occupied for dwelling purposes: "4. In the event that such proceeding is based upon a claim that the tenant or lessee has breached a provision of the lease, the court shall grant a ten day stay of issuance of the warrant, during which time the respondent may correct such breach." Therefore, a residential tenant faced with a notice to cure is no longer required to resort to instituting a declaratory judgment action to extend his or her time to cure; under RPAPL 753 (subd 4), a 10-day stay of the warrant shall be automatically forthcoming. Thus, the lease will remain in force and the landlord-tenant relationship will be undisturbed. (RPAPL 749.) Once a tenant has cured the breach, it is implicit within the new provision that he or she will not only be permitted to remain in possession of the premises until the expiration of the term of the lease but will be entitled to renewal. To interpret RPAPL 753 (subd 4) otherwise would be, in effect, to render the amendment virtually meaningless since if that were the case, its only purpose would be to delay the inevitable eviction rather than to prevent that eviction altogether. The statute, however, specifically refers to the fact that during the period of the stay, the tenant will have an opportunity to correct the breach. Thus the integrity of the lease is maintained and the tenant's rights thereunder are intact. Subdivision 4 precludes the necessity of a tenant having to seek the protection of a preliminary injunction in appropriate circumstances in order to avoid irreparable harm and, therefore, this type of matter remains within the province of the Civil Court, where it properly belongs. Although this court can perceive instances in which 10 days may not be a sufficiently long period for the tenant to cure certain types of breaches, such as unauthorized structural alterations of the premises, it is unnecessary for this court to decide at this time whether the Civil Court may, in a proper case, provide for a stay in excess of 10 days. Further there may be situations where the controversy between the parties is not one which can be resolved by the Civil Court, and the tenant, in order to avoid irreparable harm, will be required to apply to the Supreme Court for equitable relief. (*First Nat. Stores v Yellowstone Shopping Center, supra.*) However, the instant is not one of those occasions. Consequently, Special Term should have denied plaintiff's motion for a preliminary injunction and granted defendants' cross motion to dismiss the complaint.