Molberg v Phoenix Cayman Ltd. (2025 NY Slip Op 01048)

Molberg v Phoenix Cayman Ltd.

2025 NY Slip Op 01048

Decided on February 20, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 20, 2025

Before: Webber, J.P., Singh, Moulton, Pitt-Burke, Rosado, JJ. 

Index No. 653841/23|Appeal No. 3739|Case No. 2023-05964|

[*1]Karoline Molberg as Executor of the Estate of Erik Molberg, Individually and Derivatively on Behalf of Phoenix Holdco Ltd., et al., Plaintiffs-Respondents,
v
Phoenix Cayman Ltd. et al., Defendants-Appellants. 

1/0 Capital, LLC, New York (Jason H. Berland of counsel), for appellants.
Rachel Kierych, New York, for respondents.

Order, Supreme Court, New York County (Barry R. Ostrager, J.), entered on or about October 18, 2023, which denied defendants' motion to dismiss the complaint, unanimously reversed, on the law, with costs, and the motion granted. The Clerk is directed to enter judgment accordingly.
This action arises from an attempt to remove defendant Phoenix Cayman Ltd. from its position as the General Partner of nominal plaintiff Phoenix Holdco Ltd. (the Partnership).
In March 2011, fifteen limited partners agreed to invest in the Partnership and entered into a Limited Partnership Agreement with the General Partner (the LP Agreement). Pursuant to Section 6.1(d)(i)(B) of the LP Agreement, the General Partner may be "removed with Cause upon the affirmative act of the Supermajority in Interest." "Cause" was defined to include when the General Partner "has committed a knowing, willful and material breach of this Agreement that is not cured within 30 days after the General Partner's receipt of a notice from the Partnership with respect to such breach" (emphasis added).
On January 23, 2023, a limited partner emailed one of the directors of the Partnership inquiring as to when the audited financials for 2020 and 2021 would be completed and made available. The director responded that the request should be directed through their attorneys, as the limited partner was involved in a separate litigation with the Partnership. This lawsuit had been brought by four of the limited partners based on their dissatisfaction with the Partnership's management (the Black Action) (see Black v Phoenix Cayman Ltd. , _AD3d_, 2025 NY Slip Op 00147 [1st Dept 2025]). Shortly thereafter, another nonparty limited partner followed up on the request and received a similar response.
On February 16, 2023, plaintiff Karoline Molberg (Karoline), as executor of the estate of her father, limited partner Hans Erik Molberg, circulated the 2020 year-end financials, which had been produced in the Black Action, to the other limited partners and the director. Her communication also stated that "the failure to circulate these financials to the LPs is a breach of the LPA and another dereliction of [Phoenix Cayman's] duty as GP."
On April 28, 2023, Phoenix Cayman received a letter, signed by Karoline individually in her capacity as executor of her father's estate. The "Re" line read: "Phoenix Holdco LP — Demand for Audited Financials from Phoenix Cayman Ltd." The letter stated that she was writing "regarding the books, records, financial statements and other reports of Phoenix Holdco LP." It also detailed the January 2023 requests for the 2020 and 2021 financials, which were "denied," and concluded with a "demand" for additional financials for 2022 and the first quarter of 2023.
A supermajority of the limited partners voted in favor of removing Phoenix Cayman as General Partner and replacing it with plaintiff Blue Bear Ltd. on June 5, 2023. The General Partner took the position that the resolution was null [*2]and void. Later that month, the General Partner provided bank statements and balance sheets for the Partnership for 2021, 2022, and the first quarter of 2023.
Plaintiffs then commenced this action on August 9, 2023, alleging that Karoline's April 28, 2023 letter provided notice of a breach sufficient to trigger the 30-day contractual cure period set forth in the LP Agreement. On September 22, 2023, defendants moved to dismiss the complaint, arguing that the letter was not sufficient to provide such notice; therefore, there was no basis to remove the General Partner for "Cause."
Supreme Court denied the motion, holding that "[t]he documentary evidence does not irrefutably preclude plaintiff's claim" because of "the attendant circumstances," including "the multiple correspondences from limited partners requesting the financials at issue, the ongoing [Black Action] based on the same set of facts, and the fact that the April 28, 2023 letter was imperative in its demand for the documents and the cited basis for those documents." The court added that the April 28, 2023 letter "also sufficiently identified the existence of a breach of the [LP Agreement]."
We disagree. Dismissal of this action is warranted because the April 28, 2023 letter did not trigger the 30-day cure period under the subject LP Agreement. Although a limited partner could theoretically send notice on the Partnership's behalf, that is not what happened here. Rather, the letter was signed by a single limited partner who did not purport to be acting in anything other than her individual capacity. The letter was written in the first-person singular, no other limited partners were copied or referenced, and there was no language in the letter suggesting that it was being sent "derivatively," "on behalf of," or even "for the benefit of" the Partnership. As the letter was not "from the Partnership," as required by the LP Agreement, there was no basis to remove the General Partner for "Cause" thereunder (see e.g. Filmtrucks, Inc. v Express Indus. & Term. Corp. , 127 AD2d 509, 510 [1st Dept 1987]).
The letter also did not provide notice of any breach — of § 8.2 or any other provision of the LP Agreement. It did not use the words "notice," "breach," or "cure" and did not reference the contractual removal provision or definition of "Cause." Although the letter cited the General Partner's obligation to provide financial information under § 8.2 and referenced the January 2023 email correspondence, it is best read as a prospective demand for audited financials, and it did not put defendants on a notice that a "knowing, willful and material breach" of the LP Agreement had already occurred and the 30-day cure period was triggered.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 20, 2025